# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| KIRK SZOPINSKI,<br><br>                          Plaintiff,<br>v.<br><br>JEREMY L. STANIEC, JOHN KOONTZ, CO MUHLENBERG, CO GOTTERSCHALK, CO STRUNZ, GWENDOLYN A. VICK, and CRYSTAL MARCHANT,<br><br>                        Defendants. | Case No. 18-CV-437-JPS<br><br>**ORDER** |

        Plaintiff, who is incarcerated at Waupun Correctional Institution, filed a *pro se* complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated. (Docket #1). Plaintiff then filed an amended complaint, which differs little from the original complaint but is typed, as opposed to handwritten. (Docket #6). The amended complaint supersedes the original complaint and is the governing pleading in this case. *See Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999). Plaintiff has paid the filing fee in full.

        The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Gladney v. Pendelton Corr. Facility*, 302 F.3d 773, 774 (7th Cir. 2002). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327; *Gladney*, 302 F.3d at 774. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109 (7th Cir. 2003) (citations omitted); *accord Paul v. Marberry*, 658 F.3d 702, 705 (7th Cir. 2011).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see Christopher v. Buss*, 384 F.3d 879, 881 (7th Cir. 2004). However, a complaint that offers "labels and conclusions" or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint allegations "must be enough to raise a right to

relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted); *Christopher*, 384 F.3d at 881.

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The Court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff alleges that on January 6, 2018, at about 1:00 a.m., he yelled from his cell to John Koontz ("Koontz"), a correctional sergeant, and Gwendolyn Vick ("Vick"), a nurse, telling them that he intended to harm himself and wanted to be placed on observation status. (Docket #6 at 2). Koontz and Vick did not attend to Plaintiff. *Id.*

Plaintiff then activated the emergency call button in his cell. *Id.* Correctional Officer Muhlenberg ("Muhlenberg") answered the call, and Plaintiff told him that he was going to harm himself by swallowing his eyeglasses. *Id.* Plaintiff asked to be placed on observation status. *Id.*

Muhlenberg told Plaintiff he did not care what Plaintiff intended to do because he had other things to do. *Id.* Plaintiff then broke the frames of his glasses and swallowed one of the bows. *Id.* He activated his emergency call button again and informed Muhlenberg that he swallowed part of his glasses and that he was going to cut himself and swallow the other parts of his glasses. *Id.* at 3.

Correctional Officer Gotterschalk ("Gotterschalk") then responded to Plaintiff's cell. *Id.* Plaintiff threw broken pieces of his glasses at the cell door and told Gotterschalk that he had already swallowed another part of his glasses. *Id.* Plaintiff threatened to swallow additional parts of his glasses if he was not put on observation status. *Id.* Gotterschalk left Plaintiff's cell without saying anything, and Plaintiff swallowed another part of his glasses. *Id.* Gotterschalk returned to Plaintiff's cell and Plaintiff told him that he swallowed the other bow of his glasses. *Id.* Gotterschalk left Plaintiff's cell. *Id.*

Shortly thereafter, Lieutenant Jeremy Staniec ("Staniec") arrived at Plaintiff's cell. *Id.* Plaintiff described to Staniec the events of that morning, and Plaintiff and Staniec had a disagreement about whose fault it was that nothing was done to help Plaintiff. *Id.* Plaintiff was removed from his cell and placed in a strip cell. *Id.*

About an hour and a half later, around 3:00 a.m., Plaintiff was examined by Vick. *Id.* at 4. She told Plaintiff that if he vomited or coughed up blood he should alert staff immediately, who would then alert the Health Services Unit ("HSU"). *Id.*

Later that day, at about 1:45 p.m., Plaintiff vomited blood and activated his emergency call button in his cell. *Id.* Correctional Officer Strunz ("Strunz") responded and Plaintiff told him about having

swallowed glasses pieces earlier and told him that he had just vomited blood. *Id.* Strunz did not notify HSU or anyone else. *Id.* Plaintiff was then put on observation status, though he does not say who caused that to happen. *Id.*

On January 8, 2018, Plaintiff was seen by Torria Van Buren ("Van Buren"), who is not a defendant, for an evaluation to determine if he could be removed from observation status. *Id.* She told Plaintiff she needed to consult with HSU because parts of Plaintiff's glasses were still in his stomach. *Id.* Van Buren left and then returned to Plaintiff's cell sometime later, stating that she spoke to Crystal Marchant ("Marchant"), a nurse and the manager of the HSU. *Id.* They did not yet know if they could remove Plaintiff from observation status. *Id.*

On January 9, 2018, DeBlanc, whose first name is not provided and who is not a defendant, informed Plaintiff that she had spoken to Van Buren about Plaintiff's situation. *Id.* Van Buren said Marchant had decided that the HSU was not going to do any medical procedure to remove the parts of the glasses Plaintiff ingested. *Id.* at 4. Marchant also would not allow Plaintiff to go to the hospital to get the glasses pieces removed from his stomach. *Id.* at 5. Plaintiff alleges that the glasses pieces stayed in his abdomen for three months. *Id.*

On these allegations, Plaintiff seeks to bring claims against all defendants (Marchant, Staniec, Koontz, Muhlenberg, Gotterschalk, Vick, and Strunz) under the Eighth Amendment for deliberate indifference to his serious medical need. *Id.* at 5–6.

Plaintiff's amended complaint crosses the low threshold set at screening to state a claim for deliberate indifference to his serious medical needs, in violation of the Eighth Amendment. To sustain such a claim,

Plaintiff must show: (1) an objectively serious medical condition; (2) that Defendant knew of the condition and was deliberately indifferent in treating it; and (3) this indifference caused him some injury. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The deliberate indifference inquiry has two components. "The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk." *Id.* Negligence cannot support a claim of deliberate indifference, nor is medical malpractice a constitutional violation. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011). To show that a delay in providing treatment is actionable under the Eighth Amendment, Plaintiff must also provide evidence that the delay exacerbated his injury or unnecessarily prolonged pain. *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016).

    First, at the present stage, the Court finds that Plaintiff states a claim against Marchant and Strunz for deliberate indifference to his serious medical need resulting from having swallowed parts of his eyeglasses. Presumably, swallowing the bows of eyeglasses is potentially very destructive to a person's body; therefore, for the purposes of screening, Plaintiff has alleged a serious medical need. As to Strunz, Plaintiff has alleged that he knew of this need and that Plaintiff had vomited blood but did nothing about it. As to Marchant, Plaintiff has alleged that she knew of this need and chose not to provide treatment. Marchant's decision might ultimately be explained as the proper exercise of medical discretion, or at worst mere negligence, but that issue must be left for factual development. Finally, although Plaintiff does not describe his injury in detail, he alleges he has suffered long-term pain and suffering.

Plaintiff has also stated a claim for deliberate indifference to his risk of self harm against Koontz, Vick, Muhlenberg, and Gotterschalk. A prisoner who is at a substantial risk of committing suicide or seriously injuring himself faces a "substantial risk of serious harm." *Cavalieri v. Shepard*, 321 F.3d 616, 620–21 (7th Cir. 2003). Plaintiff alleges that Koontz, Vick, Muhlenberg and Gotterschalk knew Plaintiff intended to harm himself and wanted to be placed on observation status but did nothing to prevent him from harming himself, which he ultimately did. These allegations pass the low bar of screening to state a claim for relief.

Plaintiff will not be permitted to proceed against Staniec. Plaintiff's only allegations involving Staniec are that Staniec arrived at Plaintiff's cell after he had swallowed his glasses and bickered with Plaintiff about whose fault it was before Plaintiff was sent to a strip cell for observation. Even if Plaintiff does not like the way Staniec spoke to him, he has not alleged that Staniec stood in the way of Plaintiff receiving treatment for a medical need.

Thus, Plaintiff will be permitted to proceed on claims against Marchant and Strunz for deliberate indifference to his serious medical need stemming from Plaintiff swallowing of his eyeglasses, and against Koontz, Vick, Muhlenberg, and Gotterschalk for deliberate indifference to his serious medical need stemming from his threat of self harm. 28 U.S.C. § 1915A(b).

Accordingly,

**IT IS ORDERED** that defendant Jeremy Staniec be and the same is hereby **DISMISSED**;

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's Amended Complaint and this Order are being

electronically sent today to the Wisconsin Department of Justice for service on Defendants;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Defendants shall file a responsive pleading to the Amended Complaint within sixty (60) days of receiving electronic notice of this Order;

**IT IS FURTHER ORDERED** that a copy of this order be sent to the officer in charge of the agency where Plaintiff is confined;

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, Plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

>    Office of the Clerk
>    United States District Court
>    Eastern District of Wisconsin
>    362 United States Courthouse
>    517 E. Wisconsin Avenue
>    Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 13th day of July, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge