# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KIRK SZOPINSKI,

                  Plaintiff,

v.

JOHN KOONTZ, MICHAEL LUENEBURG, ABIGAIL GOTTSCHALK, GREGORY STRUNZ, GWENDOLYN A. VICK, and CHRYSTAL MARCHANT,

                  Defendants.

Case No. 18-CV-437-JPS

**ORDER**

**1.    INTRODUCTION**

Plaintiff Kirk Szopinski ("Szopinski"), a prisoner proceeding *pro se*, alleges that the defendants, employees of Waupun Correctional Institution ("WCI"), violated his civil rights by not responding promptly to his threat of self-harm, resulting in him swallowing a piece of his eyeglasses. (Docket #6). The Court permitted Szopinski to proceed against the defendants on an Eighth Amendment claim of deliberate indifference to his serious medical need. (Docket #7 at 5–7).

On March 1, 2019, the defendants filed a motion for summary judgment, along with a brief, proposed facts, and supporting declarations. (Docket #13–#21). Szopinski filed a brief in response to the defendants' motion, a response to their proposed findings of fact, his own proposed findings of fact, a declaration, and exhibits. (Docket #27–#34).[1] The

---

[1]Szopinski subsequently filed two motions "to clarify." (Docket #43 and #44). In the first, Szopinski explains that an exhibit meant to be included with an

defendants filed a response to Szopinski's proposed facts, (Docket #41), but they did not file a reply, and their time to do so has long since passed. For the reasons explained below, the defendants are entitled to judgment in their favor.

2.   **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

---

earlier submission was mistakenly left out, and he includes a copy. (Docket #43-1). It appears to the Court that the exhibit was in fact included along with his summary judgment response. *See* (Docket #34 at 16). The remainder of the motion highlights disagreements Szopinski has with the defendants' responses to his proposed facts. The procedural rules of this court do not permit a non-movant to file a reply in support of his proposed findings of fact and, in any event, Szopinski's arguments therein do not affect the outcome of this case. For all of these reasons, the Court will deny his motion to clarify. Szopinski's second motion to clarify is identical to his first, so it will be denied as well. Finally, the Court will also deny a motion for sanctions Szopinski filed on the back of his motions to clarify, arguing that the defendants should be punished for misleading the Court with their responses to his proposed facts. (Docket #49). Any inaccuracies in the defendants' factual submissions will be revealed in the Court's consideration of the evidence and held against them at summary judgment, as is true in the regular course of any civil litigation.

3.      **RELEVANT FACTS**

The following facts are taken from the defendants' proposed facts, (Docket #15), subject to Szopinski's disputes of the same, (Docket #28), Szopinski's proposed facts, (Docket #29), subject to the defendants' disputes of the same, (Docket #41), and the parties' supporting declarations and exhibits. At all times relevant to this lawsuit, Szopinski was an inmate at WCI and the defendants were employees of WCI. John Koontz ("Koontz") was a sergeant, Michael Lueneburg ("Lueneburg"), Gregory Strunz ("Strunz"), and Abigail Gottschalk ("Gottschalk") were correctional officers, and Gwendolyn Vick ("Vick") and Chrystal Marchant ("Marchant") were registered nurses.

On the night of January 5 to 6, 2018, the restrictive housing unit at WCI was unusually loud, with inmates yelling and pounding on their doors. In the early morning hours of January 6, officers suited up to enter the cell of an inmate and ultimately needed to use tear gas. Gottschalk, who had been assigned to a different area of the prison, was brought into the restrictive housing unit to help out while other officers conducted the cell entry. Szopinski yelled out to Koontz and Vick, who were at the cell of a neighboring inmate, that he intended to swallow a piece of his eyeglasses; they claim they did not hear him, but the Court must construe this fact in Szopinski's favor. Szopinski also claims to have pressed his emergency call button at 1:00 a.m. to report his threat to Lueneburg, the officer in the control bubble; the call log does not show this and Lueneburg denies it, but the Court will accept Szopinski's story. In any event, Lueneburg could not leave the control bubble unattended, so his recourse was limited to notifying the unit's supervising officer. Szopinski says that, because he was ignored, he swallowed a piece of his glasses.

Around 1:20 a.m., Gottschalk walked by Szopinski's cell, and Szopinski told her he had swallowed part of his glasses. Gottschalk observed no blood or physical injury. Szopinski threw his broken glasses and threatened to swallow the rest of them if he was not put on observation status. Gottschalk left Szopinski's cell and reported the issue to Koontz. Szopinski called Lueneburg in the bubble again, and Lueneburg also notified Koontz.

Based on the report from Gottschalk and the call from Lueneburg, Koontz and a lieutenant went to Szopinski's cell. Szopinski cooperated in being removed from his cell and escorted to a strip cell. There, at 1:40 a.m., Vick evaluated Szopinski and noted that he was not coughing and had no complaints of discomfort. She saw no emergent medical needs (obstructed airway or bowels, pain, signs of distress, abnormal vital signs), and so she instructed Szopinski to alert staff if he vomited or coughed up blood. Szopinski was placed on observation status, meaning he'd be checked on every fifteen minutes.

At 3:20 a.m., Koontz called Vick to report that Szopinski was complaining of coughing up blood and left side abdominal pain. Szopinski was evaluated in his cell, but there was no blood and Szopinski reported the pain was gone. That afternoon, around 1:45 p.m., Szopinski called to the control center, then staffed by Strunz, to report that he vomited blood. Strunz was not able to leave the bubble to personally check on Szopinski, but he notified staff on the floor to check on Szopinski. At about 2:20 p.m., an officer in the unit called for a nurse to evaluate Szopinski. The nurse, Robert Ahlborg ("Ahlborg"), arrived at 2:40 p.m. and evaluated Szopinski, who presented with normal vital signs, normal bowel sounds, and no abdominal distention which would indicate a blockage. Ahlborg noted a

small amount of vomit on the floor with a trace amount of blood. Ahlborg determined that Szopinski was not in any imminent danger and instructed him to contact health services if his symptoms worsened.

The next day, January 7, 2018, Szopinski was evaluated because he had started a hunger strike. He denied vomiting that day and said he was not in pain. He did not exhibit signs of a bowel or airway obstruction, he exhibited no signs of distress, and his vital signs were within normal limits. That evening, Szopinski fell in his cell and dislocated his finger. Vick examined him and, due to the emergent nature of the injury, sent him to the emergency room at Waupun Memorial Hospital. When she called the emergency room nurse about Szopinski's finger, Vick also reported the ingested foreign body and recommended that Szopinski be evaluated for that as well.

At the hospital, Szopinski was evaluated both for his finger injury and ingestion of a piece of his glasses. With respect to the latter, the emergency room physician determined that no treatment was needed at that time. He expected the swallowed object to move through Szopinski's digestive tract and pass out of the body normally. The physician also told Szopinski to contact a surgeon if the object did not pass in one to two days.

On January 8, 2018 the object still had not passed, so a nurse at WCI ordered that Szopinski be scheduled for an upper endoscopy ("EGD") with an outside surgeon, Dr. Mikkelson. Inmates' appointments with outside providers are subject to the availability of that provider just as with the general population; in this case, it took until February 26, 2018 for the surgeon to review the case to determine the appropriate treatment and then contact WCI to schedule an EGD. Szopinski had an x-ray scheduled on February 26, 2018 as part of this review, but he refused the x-ray. He had

another abdominal x-ray on March 1, 2018, and it showed no bowel obstruction. Based on Dr. Mikkelson's availability, an EGD was scheduled for, and took place on, April 17, 2018. Two foreign bodies consistent with eyeglass temples were removed.

4. **ANALYSIS**

Szopinski was permitted to proceed against the defendants on Eighth Amendment claims of deliberate indifference to his serious medical needs. His claims can be sorted into two categories. First, Szopinski claims that defendants Koontz, Strunz, Lueneburg, and Gottschalk were deliberately indifferent to his risk of committing self-harm because they were aware of his threat to swallow his glasses failed to protect him from himself. Second, Szopinski claims that defendants Vick and Marchant were deliberately indifferent because they knew he had swallowed his glasses and did not provide adequate medical assistance.[2]

**4.1 Failure to Protect Szopinski from Self-Harm**

First, Szopinski claims that Koontz, Strunz, Lueneburg, and Gottschalk were deliberately indifferent to his risk committing self-harm by failing to stop him from swallowing a piece of his eyeglasses. To succeed on his claim, Szopinski must prove that "(1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating [him]; and (3) this indifference caused

---

[2]The defendants' proposed facts show that Marchant was not involved with Szopinski's evaluation or treatment at any point on January 6 to 8, 2018, and Szopinski conceded this to be true. Individual liability under Section 1983 "requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017). Because Marchant was not personally involved in the alleged deprivation, the claim against her cannot proceed.

[him] some injury." *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). The defendants argue that Szopinski has not created a jury question as to the second element and the Court agrees. Even assuming Szopinski's self-harm threat presented a sufficiently serious risk of harm to implicate the Eighth Amendment, the evidence shows that the defendants were not deliberately indifferent in responding to that risk.

With respect to self-harming or suicidal behavior, the deliberate indifference component of an Eighth Amendment claim requires "a dual showing that the defendant: (1) subjectively knew the prisoner was at substantial risk of committing suicide and (2) intentionally disregarded the risk." *Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006) (citations omitted). The *Collins* court further explained that, as to the second showing,

> [d]eliberate indifference requires a showing of "more than mere or gross negligence, but less than the purposeful or knowing infliction of harm." *Matos*, 335 F.3d at 557; *Estate of Novack*, 226 F.3d at 529. We have characterized the required showing as "something approaching a total unconcern for [the prisoner's] welfare in the face of serious risks." *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992). To establish deliberate indifference, a plaintiff must present evidence that an individual defendant intentionally disregarded the known risk to inmate health or safety. *Matos*, 335 F.3d at 557. A defendant with knowledge of a risk need not "take perfect action or even reasonable action[,] ... his action must be reckless before § 1983 liability can be found." *Cavalieri v. Shepard*, 321 F.3d 616, 622 (7th Cir. 2003).
> . . .
> [In sum,] [t]he deliberate indifference standard imposes a "high hurdle" for a plaintiff to overcome.

*Id.* at 761–62.

Thus, while prison staff are expected to protect inmates from self-harm, *Taylor v. Wausau Underwriters Ins. Co.*, 423 F. Supp. 2d 882, 889 (E.D.

Wis. 2006), "[a] risk of future harm must be 'sure or very likely' to give rise to 'sufficiently imminent dangers' before an official can be liable for ignoring that risk." *Davis-Clair v. Turck*, 714 F. App'x 605, 606 (7th Cir. 2018) (quoting *Baze v. Rees*, 553 U.S. 35, 50 (2008) (Roberts, C.J., plurality opinion)).

In this case, the evidence shows that the defendants did not act recklessly in responding to Szopinski's threat to swallow his glasses. Szopinski first yelled out of his cell about his self-harm threat during a chaotic time on the unit; the officers he yelled to, including Koontz, were occupied in the cell of another inmate with a medical need. Even if Koontz did hear Szopinski, which he denies, Koontz's decision to finish attending to another inmate's medical need instead of dropping everything to run to Szopinski is not reckless. This is especially true given that there is no evidence Koontz knew Szopinski would act on his threat (Szopinski himself said he made the threat in order to be put into observation), and there is no evidence Koontz knew the small piece of metal Szopinski threatened to swallow would put Szopinski in imminent danger of serious harm (in fact, it didn't).

Similarly, even if Szopinski called Lueneburg in the control bubble at 1:00 a.m. to threaten self-harm, which Lueneburg denies, there is no evidence that Lueneburg knew Szopinski's self-harm was imminent, as opposed to a hollow threat to get into observation, or that his threatened conduct would cause such serious harm that the situation called for Lueneburg to direct officers to drop everything and run to Szopinski. In other words, Szopinski threatening to swallow a piece of his glasses because he wanted to be put into observation, without some other evidence that the defendants actually knew his threat was sure or very likely to give

rise to an imminent danger, is not enough to confer liability for ignoring that risk.

Next, both Gottschalk and Lueneburg notified the supervising officer, Koontz, when they learned that Szopinski had swallowed a piece of his glasses. Koontz went to Szopinski's cell, sometime shortly before 1:40 a.m., and called a nurse to evaluate him. Twenty minutes passed between the time Gottschalk spoke with Szopinski at his cell and Szopinski's evaluation by a nurse; fewer than twenty minutes passed between Szopinski's 1:24 a.m. call to Lueneburg in the bubble and his evaluation by a nurse. This response does not suggest that the defendants knowingly ignored a serious, imminent risk; instead, the defendants' response was appropriate in light of the relatively non-emergent risk of harm to Szopinski and the resources available. It may not have been the speedy response Szopinski believes he can demand, but it was reasonable under the circumstances and sufficient to satisfy the defendants' obligations under the Eighth Amendment.

Finally, as to Strunz, his only involvement was on the afternoon of January 6, 2018 when Szopinski called to him in the control bubble to report that he had vomited blood. Strunz was not able to leave the bubble to personally check on Szopinski, but he notified officers on the floor to check on Szopinski. Within about a half an hour, an officer on the floor called for a nurse to evaluate Szopinski. The nurse arrived and evaluated Szopinski, who presented with no signs of a medical emergency. There is no evidence that Strunz ignored Szopinski's report of having vomited. He acted reasonably in discharging his duty to pass on information from his post to other officers capable of attending to the situation.

On this evidence, no reasonable jury could find that the defendants were deliberately indifferent to Szopinski's self-harm attempt. *See Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted, because in that case it cannot be said that they were deliberately indifferent."). The claim against Koontz, Gottschalk, Lueneburg, and Strunz cannot proceed to trial.

### 4.2 Medical Attention for Swallowing a Foreign Object

Next, Szopinski claims that Vick was deliberately indifferent because she knew he had swallowed a piece of his glasses and did not provide adequate medical assistance. The same elements of an Eighth Amendment claim explained above apply to this deliberate indifference claim as well. That is, to show deliberate indifference, Szopinski must prove that "(1) [he] had an objectively serious medical condition; (2) the defendant[] knew of the condition and [was] deliberately indifferent to treating [him]; and (3) this indifference caused [him] some injury." *Gayton*, 593 F.3d at 620.

Szopinski's claim against Vick fails because her response to Szopinski's self-harm incident was prompt and reasonable. She evaluated him in the early morning hours of January 6, 2018 as soon as she was summoned. She determined that he showed no signs of imminent distress and needed no additional care at that time; she instructed him to contact staff if his condition worsened. A few hours later, he reported that his pain was gone. The next day at 2:40 p.m., another nurse saw Szopinski and again noted no signs of an emergent condition.

The next day, January 7, 2018, Vick sent Szopinski to the hospital after he fell and injured his finger, and she thought proactively to include instructions for the emergency room doctor to check on the potential bowel obstruction as well. Consistent with Vick's medical judgment up to that point, the emergency room doctor also determined that no treatment was needed at that time. Only when more time went by and Szopinski still had not passed the piece of metal did a procedure become necessary.

Vick's actions fall far short of "a total unconcern for [Szopinski's] welfare." *Duane*, 959 F.2d at 677. Her prompt evaluations of Szopinski, and her instruction to emergency room staff to evaluate Szopinski for a bowel obstruction even though he was not complaining of symptoms at that time, demonstrate not indifference but an overall concern for Szopinski's wellbeing. The emergency room doctor's concurrence with a wait-and-see approach lends further credence to the reasonableness of Vick's judgment. And to the extent Szopinski begrudges the short delay in him being sent from the prison to a hospital to be evaluated for the bowel obstruction, he has not shown the delay caused any additional harm. *Petties v. Carter*, 836 F.3d 722, 730–31 (7th Cir. 2016) ("To show that a delay in providing treatment is actionable under the Eighth Amendment, Plaintiff must also provide evidence that the delay exacerbated his injury or unnecessarily prolonged pain.").

On the undisputed facts, no reasonable jury could find that Vick was deliberately indifferent to Szopinski's medical need stemming from him having swallowed a piece of his glasses. The claim against her cannot proceed to trial.

## 5. DISCOVERY MOTIONS

After the defendants moved for summary judgment, Szopinski filed several discovery-related motions that do not affect the outcome of this case but that the Court must nonetheless address.

First, Szopinski filed two motions to stay the proceedings pursuant to Rule 56(d) so that he could obtain additional discovery. (Docket #22 and #24). Specifically, Szopinski sought to obtain video footage of the events that took place on his unit in the early morning hours of January 6 so he could prove where the officers were at that time, as well as logs from the control bubble to prove when he placed an emergency calls. Second, Szopinski filed a motion to compel and for sanctions because video footage he sought was not properly preserved. (Docket #35). In that motion, Szopinski claimed that video footage would corroborate his version of the events that took place in the early morning hours of January 6. In response to that motion, the defendants explained that the hallway video surveillance footage was not preserved because it was automatically overwritten through the WCI video system. (Docket #45). Szopinski had requested through earlier inmate complaints that the video be preserved, and he was informed that the complaint department does not store or process video. *See* (Docket #34 at 16). He did not contact the prison's litigation coordinator to request the video. *Id.*

Szopinski's motions will be denied. Underlying all three motions is Szopinski's assertion that video evidence is essential to justify his opposition to the defendants' summary judgment motion. This is simply not the case. As demonstrated above, the Court has, as it must, viewed the record and all inferences in a light most favorable to Szopinski. Video footage and control bubble logs are not necessary to Szopinski's summary

judgment opposition because the Court has accepted his version of the events from the days and nights in question. Even under Szopinski's version events, no reasonable jury could find a constitutional violation occurred. If a trial had been necessary in this case, video evidence may have been helpful to Szopinski to convince the jury to believe him. But, on the record before the Court now, a trial is not necessary.

6. **CONCLUSION**

On the undisputed facts in the record, summary judgment is appropriate in favor of the defendants.[3] The Court must, therefore, grant the defendants' motion and dismiss this action with prejudice.

Accordingly,

**IT IS ORDERED** that the Plaintiff's motions to stay (Docket #22 and #24) be and the same are hereby **DENIED;**

**IT IS FURTHER ORDERED** that the Plaintiff's motion to compel (Docket #35) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that the Plaintiff's motions to clarify (Docket #43 and #44) be and the same are hereby **DENIED;**

**IT IS FURTHR ORDERED** that the Plaintiff's motion for sanctions (Docket #49) be and the same is hereby **DENIED;**

**IT IS FURTHR ORDERED** that the Defendants' motion for summary judgment (Docket #13) be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED with prejudice**.

---

[3]Because the Court finds summary judgment is appropriate on the merits on Szopinski's claims, the Court does not reach the defendants' request for application of the doctrine of qualified immunity.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2020.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge